# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>v.<br><br>CHRISTOPHER DE LA VEGA,<br><br>                Defendant. | Case No. 18-CR-40-JPS<br><br>**ORDER** |

## 1. INTRODUCTION

Defendant was indicted on February 27, 2018 with one count of production of child pornography, one count of distribution of child pornography, and one count of extortion. (Docket #1). On September 11, 2018, Defendant filed a motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) to suppress statements he made to police in a custodial interrogation occurring on February 14, 2018. (Docket #38).

Magistrate Judge William E. Duffin has recommended that the motion be granted. (Docket #42 and #50). The recommendation came in two parts due to the government's attempt to introduce new evidence after receiving the first recommendation. (Docket #44). The government has objected to both parts of the recommendation. (Docket #51). For the reasons explained below, the Court will overrule the government's objection, adopt Magistrate Duffin's recommendations, and grant Defendant's motion to suppress.[1]

---

[1] The briefing on the government's objection has been unusual. The government timely filed its objection on December 13, 2018. (Docket #51). For reasons unknown, Defendant did not submit his opposition to the objection until well after the period for doing so had expired. (Docket #52); Gen. L. R. 72(c)(2).

2.  **RELEVANT FACTS**

The parties have filed a formal stipulation as to most of the relevant facts. (Docket #36). As to any others relied on in the recommendation, the parties have not lodged any objections. *See* (Docket #51 and #52). The Court will, therefore, adopt the facts as stated in the recommendation. Because they were concisely described in the recommendation, and in the interest of brevity, the Court will not repeat those facts here. The Court will also generously consider the audio recording of Defendant's interrogation, despite the magistrate judge's determination of its inadmissibility, (Docket #50 at 1-4), which was likewise not objected to, *see* (Docket #51).

3.  **STANDARD OF REVIEW**

When reviewing a magistrate's recommendation, the Court is obliged to analyze the recommendation *de novo*. 28 U.S.C. § 636(b)(1)(C). Thus, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* In other words, the Court's *de novo* review of Magistrate Duffin's findings and recommendations is not limited to his legal analysis alone; rather, the Court may also review his factual findings, and accept, reject, or modify those findings as it sees fit based upon the evidence. *Id.*

4.  **ANALYSIS**

The Court agrees with the entirety of Magistrate Duffin's analysis in the recommendations, including his discussion of the relevant legal principles and precedent. (Docket #42 at 5–17). The disagreement between

---

Defendant also failed to request leave to file his opposition out-of-time. *See id.* The government, in turn, did not file a reply brief or otherwise complain about Defendant's late submission. The Court will, therefore, accept Defendant's tardy opposition and rule on the objection on the seemingly incomplete state of the briefing.

the parties, and between the government and the magistrate judge, lies solely on the applicability of this case's facts to the existing case law. Thus, in keeping with the theme of brevity, this Court will assume familiarity with the magistrate judge's analysis and conclusions. It will move directly to analyzing the seven specific objections raised by the government to the recommendation.

First, the government notes that the magistrate judge did not determine who bears the burden of proof on Defendant's motion; whether Defendant must establish that he was in custody, or whether the government must show that he was *not* in custody. This is both true and irrelevant. It appears that Defendant does bear the burden to show that his interrogation was "custodial." *See United States v. Patterson*, 826 F.3d 450, 455 (7th Cir. 2016); *United States v. Lennick*, 917 F.3d 974, 977 (7th Cir. 1990). But because the facts in this case are undisputed, the burden becomes one of persuasion, not proof. The recommendation is unequivocal that Defendant was in custody based on the undisputed facts presented as applied to relevant precedent. This Court's view is the same, regardless of any pre-existing burdens on either party.

Second, the government asserts that the magistrate judge's emphasis on the forceful nature of the officers' entry into Defendant's home was misplaced. In particular, the government argues that the officers entered the home based on a valid search warrant, did so forcefully in order to achieve surprise and avoid destruction of evidence, and lawfully detained Defendant's family until the search was completed. The government suggests that "an unlawful or overly-muscular seizure suggests overreach, but following lawful procedure shows restraint. This entry was aggressive

but lawful, and would not necessarily cause a reasonable person to believe that he was not free to leave." (Docket #51 at 4).

This Court agrees with the magistrate judge that none of these observations are relevant to the determination of whether Defendant was in custody for the purposes of *Miranda*. Defendant's motion to suppress is directed solely at his custodial interrogation, and so the lawfulness of the search warrant and its execution is not before the Court. Moreover, the government provides no legal support for its conclusion that following a "lawful procedure," namely complying with the Fourth Amendment's requirement for searches to be reasonable, weighs against a finding of custody under *Miranda*. Whether a search is reasonable under the Fourth Amendment, and whether a person subjected to such a search would believe they are in custody, are two entirely separate inquiries. Here, numerous officers stormed Defendant's home in the early morning, pointed guns in his face, and handcuffed him. The forcefulness of the search weighs heavily in favor of custody.

Third, the government states that Defendant did not believe the officers were there to arrest him, but rather his stepfather, who was an illegal alien. According to the government, this weighs in favor of non-custody, as a reasonable person believing that they were *not* the target of the police action would feel somewhat freer to leave. Magistrate Duffin agreed, at least for the initial period of police contact. However, the magistrate judge found, and this Court agrees, that after the first thirty minutes of the almost two-hour interrogation, it was abundantly clear that the officers' target was in fact Defendant.

This factor plays into the government's next two objections. The magistrate judge found that, in light of the show of force and the trajectory

of the interrogation, a reasonable person would have felt that they had been lied to when the officer told Defendant that he was not in trouble. A reasonable person would then "have likely concluded that the other assurances the officers made at the same time—that he was not under arrest and that he was free to leave—were also untrue." (Docket #50 at 7).

The government counters that the agent's statement that Defendant was "not in trouble" was literally true, as he was not ultimately arrested. The Court cannot concur with this constrained interpretation of "trouble." Being the target of a police investigation qualifies as trouble, and a reasonable person in Defendant's position would have concluded that they were clearly such a target. A large number of police officers had just entered his home with guns drawn, searched the entire abode, and then questioned Defendant solely about his own activities, not those of his stepfather.

The government further asserts that Defendant voluntarily agreed to be interviewed, because the officers asked him to speak and he agreed. But Magistrate Duffin found, and this Court agrees, that Defendant "can hardly be said to have voluntarily agreed to meet with law enforcement." (Docket #42 at 13). Preliminarily, the Court notes that the officer told Defendant that they were going to take a walk, and as they walked, the officer asked if Defendant "was cool" with talking with them. *Id.* at 3. Defendant was thus *ordered* out of the house, and only once he was isolated from his family and flanked by police, did he "agree" to the interview.

The other factors at play that morning confirmed that no reasonable person would have felt free to decline the officers' requests to leave the house or participate in the interview. Again, police had aggressively entered Defendant's home, leveled their weapons at him, and searched the entire house. The government claims that by the time Defendant was taken

outside, the threatening display had dissipated: Defendant's handcuffs had been removed, the guns had been holstered, and Defendant had been told that he was not in trouble and was free to leave.

The Court disagrees that the intimidation level had significantly abated. While the police might have believed that the force of their entry had lessened, they are accustomed to such intense activity. A reasonable person would not be used to having law enforcement barge into their home with guns drawn, and would still feel intimidated at the time of the interview. As aptly put by Magistrate Duffin, "[a]lthough the guns may have been holstered and the handcuffs removed, based upon what [his family] had just experienced [Defendant] had every reason to believe that the officers remained ready and willing to use them again if anyone tried to leave." (Docket #42 at 14). Further, police still occupied Defendant's home and held his family in the living room. During the interview, Defendant was seated in a police car with officers beside and behind him. Additionally, although the agent told Defendant he was free to leave, this was immediately followed by the suggestion that "things would go a lot faster if he cooperated with the investigation." (Docket #36 at 4).

The government's sixth objection to the recommendation is the magistrate judge's reliance on the Seventh Circuit's *Borostowski* opinion. *United States v. Borowstowski*, 775 F.3d 851 (7th Cir. 2014). This Court finds that the magistrate judge was correct to analogize to this controlling precedent, combined with the idea of "custody" as described in another Seventh Circuit opinion, *Slaight. Slaight* instructs that

> [c]ustody for *Miranda* purposes is a state of mind. When police create a situation in which a suspect reasonably does not believe that he is free to escape their clutches, he is in

custody and, regardless of [police] intentions . . ., entitled to the *Miranda* warnings.

*United States v. Slaight*, 620 F.3d 816, 820 (7th Cir. 2010).

In *Borostowski*, the defendant was awoken by thirteen armed officers entering his home, rousing him from sleep, ordering him to put his hands up, and being pulled outside. *Borostowski*, 775 F.3d at 854–55. He was handcuffed outside until the officers completed their search. *Id.* at 855. Borostowski was then brought back inside and interrogated in a bedroom while the rest of his family was kept in the home. *Id.* The two interrogating agents told Borostowski that he was not under arrest. *Id.* at 856. Borostowski then made incriminating statements over the next three hours. *Id.* at 856–58. He took a bathroom break at one point but was escorted to and from the bathroom by an officer. *Id.* at 857. He was later taken to an FBI office and subjected to a polygraph examination. *Id.* at 858. Borostowski was then arrested. *Id.*

The Court of Appeals was called upon to determine whether and when Borostowski was "in custody" for *Miranda* purposes.[2] The central question in this inquiry is whether "in light of the objective circumstances of the interrogation, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." *Id.* at 859. The court found that "the strong police presence, the use of handcuffs and a *de facto* two-man guard as restraints, the extended length of the interrogation, [and]

---

[2]It was undisputed that agents *had* given Borostowski a proper *Miranda* warning, but afterwards, he made a number of statements during the interrogation suggesting that he wanted a lawyer present. *Borostowski*, 775 F.3d at 859. The district court did not reach the question of whether Borostowski had properly invoked his right to counsel, because it found that he was not "in custody" and therefore had no such right to begin with. *Id.* Borostowski appealed the finding of non-custody. *Id.*

the confinement to a small crowded room," among other things, weighed in favor of a finding of custody. *Id.* at 860–62.

Two other facts appeared to pull in the other direction, but further analysis showed this was a mirage. Though officers had told Borostowski that he was not under arrest, and did not use a combative tone in the interrogation, "[b]eing polite to a suspect questioned in a police station and telling him repeatedly that he's free to end the questioning and leave do[es] not create a safe harbor for police who would prefer to give *Miranda* warnings after the suspect has confessed rather than before." *Id.* at 862 (quoting *Slaight*, 620 F.3d at 821). Additionally, though Borostowski was interrogated in the comfortable confines of his family home, he was "forcefully separated" from his family and was not allowed to move around the house without an escort. *Id.* at 862–63. The Court of Appeals concluded that a reasonable person would not have felt free to end the encounter with police and leave the area "at any point throughout the day." *Id.* at 863.

*Borostowski* is almost directly on-point with the material facts of the instant case. Here, Defendant's home was raided in force by armed police officers, who ordered Defendant to put up his hands at gunpoint. He was then handcuffed and taken to the living room with the rest of his family. Police searched the entire home while the family was kept under guard. The air of police control was enhanced by the officers' refusal to let Defendant's mother tend to her crying daughter in another room.

Defendant was then instructed to go outside to talk with the agents. He was no longer in handcuffs but was escorted by armed officers to the waiting police car. The agent then told Defendant that he was not under arrest and could leave, but as in *Borostowski*, this assurance clearly rang hollow. Defendant was questioned for less time than Borostowski, but two

hours is still significant. The length of the interrogation, combined with the fact that Defendant's family was still being held in the house, does not detract from a finding of custody.

The government notes that the days progressed differently for Borostowski and Defendant. The former was taken from his home, subjected to a polygraph, and then arrested, while the latter was "a free man" after his interview. (Docket #51 at 9). This Court agrees with the magistrate judge that the fact that Defendant was not arrested bears little on whether he was in custody at the time of his incriminating statements. *See* (Docket #42 at 17). The *Borostowski* court held that in light of the circumstances of that case, Borostowski had been "in custody" the entire day. This Court finds likewise in analogous circumstances.

The government also argues that other factors weigh against a finding of custody. (Docket #51 at 9–12). Each factor has already been addressed in the above analysis, but it nevertheless merits reiteration here that the government views the facts through rose-colored glasses. For a police officer or prosecutor, the day's events were not extraordinary. For a young man who had never been in contact with the police, the feeling of intimidation was likely overwhelming. Defendant was effectively presented with no choice but to acquiesce to the agent's request to speak. No reasonable person in Defendant's position would have felt free to decline the agent's requests to go outside and to speak or, once in the police car, simply open the car door and walk away.

The government's final objection appears to be that the magistrate judge overlooked Defendant's personal characteristics. The government notes that Defendant was twenty years old, had a job, and had earned an associate's degree. In the government's view, Defendant's technological

prowess and his deletion of incriminating material from his computers further reveals that he was "bold, calculating, and determined." (Docket #51 at 12). The government concludes that such a person had the willpower to refuse to be interviewed. Other factors weigh against this determination. Twenty is still quite youthful, and Defendant had no prior contact with law enforcement at all, much less any arrests or convictions. Defendant's deletion of evidence is not laudable, but the Court finds that it does little to support the government's position. It does not require much careful consideration for a scared young person to want to cover their tracks. Indeed, it reveals a *lack* of sophistication; a more rational thinker, particularly one with substantial tech savvy, would have realized that police could easily discover that information had been deleted from the computers.

5. **CONCLUSION**

The Court is in agreement with and fully adopts Magistrate Judge Duffin's analysis in the recommendations. As explained above, the government's specific objections to the recommendations supply no good reasons to quarrel with their findings. The Court will, therefore, adopt Magistrate Judge Duffin's recommendations in favor of granting Defendant's motion to suppress, (Docket #42 and #50), overrule the government's objection to those recommendations, (Docket #51), and grant the motion to suppress, (Docket #38).

Accordingly,

**IT IS ORDERED** that Magistrate Judge William E. Duffin's October 18, 2018 (Docket #42) and December 3, 2018 (Docket #50) Reports and Recommendations be and the same are hereby **ADOPTED,** and that the

government's objection thereto (Docket #51) be and the same is hereby **OVERRULED**; and

    **IT IS FURTHER ORDERED** that Defendant's motion to suppress (Docket #38) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 2nd day of April, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge